Jeanelle Antionette TONEY, Appellant

v.

CHESTER COUNTY HOSPITAL, the Chester County Hospital Foundation, Inc., Maheep Goyal, M. D., East Marshall Street Radiology and the University of Pennsylvania d/b/a The University of Pennsylvania Health System a/k/a The Clinical Practices of the University of Pennsylvania a/k/a Hospital of the University of Pennsylvania: The Trustees of the University of Pennsylvania

Jeanelle Antionette Toney, Appellant

v.

Chester County Hospital, the Chester County Hospital Foundation, Inc., Maheep Goyal, M. D., East Marshall Street Radiology and the University of Pennsylvania d/b/a The University of Pennsylvania Health System a/k/a The Clinical Practices of the University of Pennsylvania a/k/a Hospital of the University of Pennsylvania: The Trustees of the University of Pennsylvania.

Superior Court of Pennsylvania.

Argued Oct. 25, 2007.
Filed Nov. 12, 2008.
Reargument Dismissed Dec. 2, 2008.

BEFORE: FORD ELLIOTT, P.J., STEVENS, MUSMANNO, ORIE MELVIN, LALLY–GREEN, TODD *, BENDER, GANTMAN AND PANELLA JJ.

OPINION BY PANELLA, J.:

¶ 1 On March 3, 2003, Jeanelle Toney, then several months pregnant, had a pelvic ultrasound examination performed by Maheep Goyal, M.D., of the Chester County Hospital Department of Radiology. Dr. Goyal informed Toney that the results of the pelvic ultrasound were normal and did not reveal any fetal abnormalities in her unborn child. To her comfort, Toney was advised that her unborn child was normal and healthy.

¶ 2 Regrettably, when Toney gave birth to her son, Gaven Makhi Toney, on July 3, 2003, he had profound physical deformities: He lacked arms below the elbows and legs below the knee joints; suffered from hypoglossia;[1] micrognathia;[2] ventral curvature of the penis; and an umbilical hernia, among other anomalies.

¶ 3 Toney was awake and conscious during the vaginal delivery. As a result, she observed her son's abnormalities first hand immediately following birth.

¶ 4 Not surprisingly, given the assurances she had received from Dr. Goyal, Gaven's birth with such devastating fetal anomalies was a shock to Toney. Following the traumatic experience surrounding the delivery, Toney suffered from grief, rage, nausea, hysteria, nervousness, sleeplessness, nightmares and anxiety, and continues to experience emotional and mental distress.[3]

Daniel Biencivenga and Stephen E. Raynes, Philadelphia, for Toney, appellant.

Benjamin A. Post, Berwyn, for Chester County Hospital, appellee.

Arthur B. Keppel, Philadelphia, for Goyal, Univ. of Pennsylvania and Trustees of Univ. of Pennsylvania, appellees.

* Justice Todd did not participate in the consideration or decision of this case.

1. An accessory tongue.

2. Slowed growth of the jaw.

3. The circumstances surrounding Gaven's birth, Gaven's fetal anomalies, and Ms. To-

¶ 5 On June 29, 2005, Toney commenced the instant professional negligence action against Appellees Dr. Goyal, the Chester County Hospital, the Chester County Hospital Foundation, Inc., East Marshall Street Radiology, the University of Pennsylvania, and the Trustees of the University of Pennsylvania *via* a complaint claiming, *inter alia*, negligent and intentional infliction of emotional distress. All defendants, with the exception of East Marshall Street Radiology, filed preliminary objections to the complaint arguing that Toney failed to state a cause of action for negligent and intentional infliction of emotional distress. No attorney entered an appearance for East Marshall Street Radiology, and East Marshall Street Radiology has never answered the complaint. On March 15, 2006, the trial court entered an order sustaining the preliminary objections on behalf of the remaining defendants.

¶ 6 In response, Toney filed a notice of appeal on March 23, 2006. Shortly thereafter, this Court's Central Legal Staff contacted counsel for Toney and indicated that the appeal might have been premature, as Toney's claims against East Marshall Street Radiology had not been dismissed. In response, Toney filed a stipulation to dismiss East Marshall Street Radiology on April 21, 2006. Toney subsequently filed a motion seeking an order dismissing all parties and causes of action pursuant to the stipulation, which the trial court granted on April 19, 2007. Toney thereafter filed a second notice of appeal to this Court on May 15, 2007.

¶ 7 Therefore, Toney appeals from the order entered on March 15, 2006, in the Court of Common Pleas of Chester County, which sustained the preliminary objections of all defendants except East Marshall Street Radiology. After careful review, we conclude that Toney has sufficiently pled a cause of action for negligent infliction of emotional distress, and therefore reverse that portion of the order which dismissed that claim. In all other regards, we affirm.

¶ 8 Initially, we must address the jurisdictional issue raised by Chester County Hospital and Chester County Hospital Foundation, Inc. (collectively "Chester Hospital") regarding the timeliness of the two appeals. Chester Hospital argues that the first appeal was untimely because East Marshall Street Radiology was still a party defendant in the trial court at the time the notice of appeal was filed. The second notice of appeal is also untimely, Chester Hospital argues, because Toney had the opportunity to file a timely appeal beginning on April 21, 2006, when she filed the stipulation to dismiss East Marshall Street Radiology as a party defendant. Therefore, because the window of opportunity to file an appeal expired on May 21, 2006, the second appeal filed on May 15, 2007, is also untimely.[4]

¶ 9 After a close review of the certified docket entries and record, we now consolidate these two appeals *sua sponte*, as they raise identical issues. Initially we note that, despite the arguments presented

---

ney's emotional and mental condition following the birth, are all documented in the complaint. It is well-established that in reviewing preliminary objections in the nature of a demurrer, all material facts set forth in the complaint, as well as all inferences reasonably deducible therefrom, are to be admitted as true. *See Hess v. Fox Rothschild, LLP,* 925

A.2d 798, 805 (Pa.Super.2007), *appeal denied,* 596 Pa. 733, 945 A.2d 171 (2008).

4. Rule 903(a) of the Pennsylvania Rules of Appellate Procedure provides for a period of 30 days to file an appeal from an order of the trial court. *See* Pa.R.A.P., Rule 903(a), 42 Pᴀ. Cᴏɴs.Sᴛᴀᴛ.Aɴɴ.

by Chester Hospital, the second appeal was in fact timely filed. Chester Hospital concedes in its statement of the case that Toney filed a stipulation to dismiss East Marshall Street Radiology as a party defendant on April 21, 2006; as stated above, the trial court issued an order on April 19, 2007, dismissing East Marshall Street Radiology, and incorporating its prior order of March 14, 2006, which dismissed all other parties and causes of action. Under the Pennsylvania Rules of Civil Procedure, "a discontinuance may not be entered as to less than all defendants except upon the written consent of all parties or leave of court after notice to all parties." Pa. R.C.P., Rule 229(b)(1), 42 PA. CONS. STAT.ANN. Since East Marshall Street Radiology did not consent in writing to the discontinuance, leave of court was necessary to make the discontinuance effective.

¶ 10 The Hospital's argument that the stipulation was effective absent leave of the trial court is of no avail. The record is clear that although Toney circulated the stipulation, the remaining defendant, East Marshall Street Radiology, unrepresented during the pendency of this case, did not sign the stipulation, and no praecipe for discontinuance based upon it was filed. In accordance with Rule 229(b)(1), in the absence of consent by all parties, leave of court was required to effectuate the discontinuance. *See Matyas v. Albert Einstein Medical Center*, 225 Pa.Super. 230, 310 A.2d 301, 302 (1973).

¶ 11 Applying *Matyas* to the case *sub judice*, the April 21, 2006 stipulation did not trigger the time period to file an appeal, and was not effective in discontinuing the case, as East Marshall Street Radiology never consented to it in writing as required by Rule 229(b)(1). It was not until April 19, 2007, when East Marshall Street Radiology was dismissed as a defendant, that the claims against all parties

had been finally adjudicated in the trial court. Therefore, Toney's May 15, 2007 notice of appeal was timely, and the issues raised therein are properly before this Court. Under the same reasoning, the March 23, 2006 notice of appeal filed by Toney was premature, and we hereby quash it. In light of our consolidation of the two appeals docketed in the Superior Court, and the question of jurisdiction resolved, we now turn to the merits of the appeal.

¶ 12 Toney challenges the decision of the trial court in determining that she failed to state cognizable causes of action for (1) negligent infliction of emotional distress, (2) intentional infliction of emotional distress, and (3) misrepresentation. *See* Appellant's Brief, at 3.

¶ 13 Our standard of review where there is a challenge to the sustaining of preliminary objections in the nature of a demurrer is well-settled: The material facts set forth in the complaint and all inferences reasonably deducible therefrom are admitted as true. *See Price v. Brown*, 545 Pa. 216, 221, 680 A.2d 1149, 1151 (1996). "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Id.* (citation omitted).

¶ 14 As explained in *Doe v. Philadelphia Community Health Alternatives AIDS Task Force*, 745 A.2d 25, 26 (Pa.Super.2000), *aff'd*, 564 Pa. 264, 767 A.2d 548 (2001), the cause of action for negligent infliction of emotional distress is restricted to four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of

danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative. *See id.* In this appeal, Toney relies only on the first theory, *i.e.,* that Appellees had a contractual or fiduciary duty towards her. *See* Appellant's Brief, at 8.

¶ 15 When proceeding under this theory, a unanimous panel of this Court observed that

> [t]he crux of a negligent infliction of emotional distress claim is that appellees breached some duty they owed to appellant and that that breach injured her.

*Denton v. Silver Stream Nursing and Rehabilitation Center,* 739 A.2d 571, 578 (Pa.Super.1999) (although Judge McEwen, P.J.E., filed a concurring and dissenting statement, he joined in the quoted section). Therefore, under this theory of recovery, a plaintiff must establish the elements of a negligence claim, "i.e., that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Brown v. Philadelphia College of Osteopathic Medicine,* 760 A.2d 863, 868 (Pa.Super.2000), *appeal denied,* 566 Pa. 632, 781 A.2d 137 (2001), quoting *Martin v. Evans,* 551 Pa. 496, 502, 711 A.2d 458, 461 (1998).

¶ 16 In this case, Toney satisfied the pleading requirement for a "duty of care" action by averring that she was, at all relevant times, under the "medical care and treatment of" the defendants. *See* Complaint, at ¶¶ 10 & 17 (Chester County Hospital and its Foundation), at ¶ 22 (Dr. Goyal), at ¶ 28 (East Marshall Street Radiology), at ¶¶ 34 & 41 (The University of Pennsylvania and its Trustees). As Toney has sufficiently pled "a preexisting duty of care, either through contract, or fiduciary duty" she has satisfied the first element of a cause of action for negligent infliction of emotional distress. *See Armstrong v. Paoli Memorial Hospital,* 430 Pa.Super. 36, 633 A.2d 605, 615 (1993), *appeal denied,* 538 Pa. 663, 649 A.2d 666 (1994).[5]

¶ 17 In turning to whether Toney has pled a sufficient breach of that duty, as well as resultant injury and damages, we note that the cause of action for negligently inflicted emotional distress is premised upon the Restatement (Second) of Torts § 313:

> **§ 313. Emotional Distress Unintended**
>
> (1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor
>
> (a) should have realized that his conduct involved an unreasonable risk

---

**5.** In a concurring opinion in *Hunger v. Grand Central Sanitation,* 447 Pa.Super. 575, 670 A.2d 173, 183 (1996), *appeal denied,* 545 Pa. 664, 681 A.2d 178 (1996), our distinguished colleague, now retired, the Honorable Phyllis W. Beck, recognized the claim for negligent infliction of emotional distress based upon the existence of a duty and the breach of that duty:

> However, as *Armstrong* makes clear, the significant factor in making out a cause of action under *[Crivellaro v. Pennsylvania Power and Light Co.,* 341 Pa.Super. 173,

491 A.2d 207 (1985)] is not the mere existence of a relationship between plaintiff and defendant, but rather the existence of a duty flowing from that relationship. Only where such a duty exists, is breached, and causes severe emotional distress leading to bodily harm can a cause of action under *Crivellaro* successfully be asserted.

*See also Fanelle v. LoJack Corp.,* 79 F.Supp.2d 558, 565 n. 9 (E.D.Pa.2000) ("The duty must exist, be breached, and cause severe emotional distress that leads to bodily harm").

of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and

(b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

(2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other.

Restatement (Second) of Torts, § 313. *See also Armstrong*, 633 A.2d at 609. Therefore, a plaintiff in this position must establish both negligence and injury:

To state a cause of action for negligent infliction of emotional distress the plaintiff must demonstrate that she is a foreseeable plaintiff and that she suffered a physical injury as a result of the defendant's negligence.

*Id.*

 ¶ 18 The test for negligence is one of "reasonable foreseeability." *Id.,* at 608. The requirement of physical injury is satisfied if physical harm accompanies the emotional distress, *see id.,* at 609, and is measured by the standards set forth in Section 436A of the Restatement:

### § 436A. Negligence Resulting In Emotional Disturbance Alone

If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.

Restatement (Second) of Torts, § 436A.

 ¶ 19 In pleading the essential elements of the negligence component, Toney averred that the "Defendants failed to properly and correctly read and report the pelvic untrasounds" which should have revealed the profound fetal anomalies suffered by Gaven. Complaint, at ¶ 57.[6] Instead of being advised as to the true physical condition of the fetus, Toney was instead told that the fetus was normal with no fetal anomalies. *See id.,* at ¶¶ 58–62. Without the benefit of prior notification of these physical disabilities, Toney, awake and conscious during the delivery, did not have an "opportunity to brace herself for the shock" and was "without the benefit of … psychiatric, religious, or social counseling, without the benefit of making appropriate arrangements…." *Id.,* at ¶ 64, 633 A.2d 605.

¶ 20 In light of the pleadings, it cannot be rationally argued that the defendants did not owe a duty of care directly to Toney. It is also entirely foreseeable that under the circumstances as alleged, Toney would suffer traumatic emotional distress during the birth of her son. As such, we find the elements of negligence and foreseeability to have been adequately pled.

¶ 21 Next, we turn to the requirement of physical injury, *i.e.,* compensable damage. Appellees argue that even pursuant to the fiduciary duty basis, Toney must plead and prove that she was subjected to a physical impact in order to recover damages for negligent infliction of emotional distress. In contrast, Toney contends that a physi-

---

**6.** We are, of course, at the preliminary objections stage, and we must, as aforesaid, accept the averments in the complaint as true. However, nothing herein should be construed as foreclosing the defendants, and Dr. Goyal in particular, from denying and contesting the allegations surrounding the administration and interpretation of the pelvic ultrasounds in issue.

cal impact is not necessary to recover damages for emotional distress when there has been a breach of a fiduciary duty. Toney argues that only *physical injury* or *illness* resulting from the emotional distress is required, not actual physical contact. All parties to this appeal have focused their attention on the issue of whether physical impact is required if there has been a breach of fiduciary duty.

¶ 22 In all four types of negligent infliction of emotional distress cases, as outlined above, the plaintiff must have experienced physical injury as a result of having been exposed to the traumatic event. *See Armstrong*, 633 A.2d at 609. Initially, physical injury had to be accompanied by some type of *physical impact* no matter how minor, and did not include conditions manifested only as "transitory, non-recurring" mental or emotional problems.[7] However, under controlling case law, a plaintiff who can show such problems as "long continued nausea or headaches, repeated hysterical attacks or mental aberration" has demonstrated adequate physical injury sufficient to sustain a cause of action. *Id.* Relying on Comment c to Section 436A, the eminent Justice Frank Montemuro, now retired, writing for a panel of this Court, previously held that "symptoms of severe depression, nightmares, stress and anxiety, requiring psychological treatment, and ... ongoing mental, physical and emotional harm" sufficiently state physical manifestations of emotional suffering to sustain a cause of action. *Love v. Cramer*, 414 Pa.Super. 231, 606 A.2d 1175, 1179 (1992), *appeal denied*, 533 Pa. 634, 621 A.2d 580 (1992).

¶ 23 In *Crivellaro*, the plaintiff averred that she

suffered from severe emotional distress and related physical trauma, including intense headaches, uncontrollable shaking, involuntary hyperventilation and shortness of breath, frequent nightmares, inability to control bowels, upset stomach, and an intense tightening of the muscles in the neck, back and chest....

491 A.2d at 210. Writing for a unanimous panel of this Court, the Honorable Stephen J. McEwen, Jr., P.J.E., found the alleged injures exceeded the level of injuries contemplated by Section 436A and easily sustained the cause of action. *See id.*, at 210–211.

¶ 24 Here, the complaint filed by Toney enumerates the physical harm suffered by Toney as a result of the traumatic delivery of her child: "shock and severe emotional distress", Complaint, at ¶¶ 53–54; "severe shock, nervous shock, grief, rage, humiliation, emotional pain, mental anguish, emotional trauma, and emotional distress", at ¶ 65; "continued nausea and headaches, insomnia, depression, nightmares, flashbacks, repeated hysterical attacks, stress, hysteria, nervousness, sleeplessness, nightmares, and anxiety", at ¶ 67; "disabled in the past and to continue to be disabled in the future from performing her usual duties, occupations, avocations, and vocations, with a consequent loss of earnings and future earnings capacity", at ¶ 68; and "psychological treatment and care", at ¶ 69.

¶ 25 These allegations satisfy the requirement of "*immediate and substantial physical harm.*" *Doe v. Philadelphia Community Health Alternatives AIDS Task Force*, 745 A.2d 25, 28 (Pa.Super.2000), *aff'd*, 564 Pa. 264, 767 A.2d 548 (2001) (emphasis in original).

---

**7.** *See, e.g., Shumosky v. Lutheran Welfare Services of Northeastern PA, Inc.*, 784 A.2d 196, 201 (Pa.Super.2001); *Brown v. Philadelphia College of Osteopathic Medicine*, 449 Pa.Super. 667, 674 A.2d 1130, 1135 (1996).

¶ 26 Accordingly, as we conclude that the pleading requirements for all elements have been satisfied, the trial court erred in dismissing Toney's claim for negligent infliction of emotional distress.

¶ 27 Before we leave this discussion, however, it is important to mention what this case, at this stage, is not about. Our discussion above does not address, in any manner, the ultimate issue of liability. The narration of the unsettling facts as described in the complaint is necessary for our review upon preliminary objections, but does not create any presumptions of reliability at later stages of this litigation. Nor does our review reflect any opinion on whether the allegations of professional negligence will be sustained at later stages with admissible evidence and expert opinions; there are other pretrial avenues available to the parties to test the legal sufficiency of the claims following the completion of discovery and the exchange of expert reports. Our decision here, as stated, is limited to determining whether the facts, as alleged, support a legally cognizable cause of action.

¶ 28 In her second issue on appeal, Toney contends that the trial court erred in finding that the actions of the Appellees, under all of the circumstances described herein, did not support a claim for intentional infliction of emotional distress. This tort, as defined in Section 46 of the Restatement (Second) of Torts, has never been explicitly recognized as a cause of action by our Pennsylvania Supreme Court, although the Supreme Court has cited the section as setting forth the minimum elements necessary to sustain such a cause of action. *See Taylor v. Albert Ein-*stein Medical Center, 562 Pa. 176, 181, 754 A.2d 650, 652 (2000) (plurality).[8]

¶ 29 In *Taylor*, then Justice, now Chief Justice, Ronald Castille, in a concurring opinion joined by another Justice, took issue with the broad proposition that our Supreme Court has never expressly recognized a cause of action for emotional distress, and found recognition of a cause of action for "serious mental or emotional distress resulting from intentional or wanton conduct" in *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970). *Taylor*, 562 Pa. at 184, 754 A.2d at 654. However, Justice Castille found this tort to be *sui generis*; whereas the cause of action in *Papieves* was based upon Section 868 of the Restatement, the Appellant herein, as did the plaintiff in *Taylor*, relies upon Section 46.

¶ 30 While acknowledging that this tort has not been officially adopted by our Supreme Court, and in an attempt to reconcile the *Taylor* decision with an attack on the legality of this cause of action, this Court, in a recent decision authored by Senior Judge Patrick R. Tamilia, held the standard of review as follows:

> Whatever the Supreme Court eventually decides in this matter, we conclude that when an intentional infliction of emotional distress claim is dismissed upon demurrer, the appropriate legal standard to be applied in reviewing the claim is whether the complaint sufficiently pleads the claim in a manner that corresponds, "at a minimum," with the provisions of the Restatement (Second) of Torts, § 46(1), Outrageous Conduct Causing Severe Emotional Distress.

8. The Superior Court must follow the mandates of the Supreme Court. *See Dominick v. Statesman Ins. Co.,* 692 A.2d 188, 192 (Pa.Super.1997), *appeal denied,* 555 Pa. 701, 723 A.2d 671 (1998) (noting that because the Su-perior Court's "formal purpose is to maintain and effectuate the decisional law of our [S]upreme [C]ourt as faithfully as possible," we are not authorized to create or adopt a new standard).

*Reardon v. Allegheny College,* 926 A.2d 477, 487 n. 12 (Pa.Super.2007), appeal denied, 596 Pa. 755, 947 A.2d 738 (2008). The Court in Reardon went on to cite *Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745 (1998), for the pleading requirements of an action for intentional infliction of emotional distress:

> [T]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society ... [I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

*Reardon,* 926 A.2d at 488, *quoting Hoy,* 554 Pa. at 151, 720 A.2d at 754 (internal citation omitted).

¶ 31 Appellant's complaint includes the following averments in support of this cause of action:

¶ 46. Defendant Maheep Goyal, MD improperly read and interpreted Ms. Toney's March 3, 2003 pelvic ultrasound of her unborn baby reporting that there were no anomalies.

¶ 47. Had Maheep Goyal, MD properly read and interpreted Ms. Toney's March 3, 2003 pelvic ultrasound of her unborn baby, Gaven Makhi Toney's severe multiple fetal anomalies should have been identified and Ms. Toney should have been notified of the severe multiple fetal anomalies prior to Gaven Makhi Toney's birth.

¶ 48. Defendants informed Ms. Toney that her March 3, 2003 pelvic ultrasound was normal and did not reveal any fetal anomalies.

¶ 49. To the contrary, the defendants expressly represented to Ms. Toney during the course of her pregnancy that Gaven Makhi Toney was normal and healthy.

. . .

¶ 57. Defendants failed to properly and correctly read and report the pelvic ultrasounds which should have revealed these profound fetal anomalies.

. . .

¶ 61. Defendants incorrectly informed Ms. Toney that the pelvic ultrasounds of her unborn baby did not reveal fetal anomalies.

. . .

¶ 63. The carelessness and negligence of the defendants herein increased risk of harm to and the injuries and damages suffered by Jeanelle Antionette Toney.

. . .

¶ 71. The defendants' conduct with regard to plaintiff Jeanelle Antionette Toney and her unborn baby was reckless and displayed a reckless indifference to the health, safety, and welfare of Jeanelle Antionette Toney and her unborn baby.

Further specification of the alleged "careless and negligent" actions of the defendants is contained in numerous other paragraphs which address causation and separate numbering of the various counts.

¶ 32 Similar to the facts underlying the claim in *Reardon,* these allegations, accepted as true as per our standard of review at this time, do not rise to a level that could be described as "the most clearly desperate and ultra extreme conduct...." *Hoy,* 554 Pa. at 152, 720 A.2d at 754. At its center, the conduct alleged

here, and the alleged resultant emotional harm to Toney, involve heartbreaking circumstances, but allegations of negligence and carelessness do not rise to the level of conduct premised upon standards such as "atrocious" and "utterly intolerable" behavior.

¶ 33 As the complaint does not supply any factual allegations to support the legal conclusion of recklessness [9] or intentional acts, we conclude that the trial court committed no error when it dismissed the cause of action for intentional conduct.

¶ 34 Finally, Toney argues that the trial court erred in dismissing her claim for misrepresentation; however, our review of Toney's complaint reveals that she pleaded no such claim. A complaint must apprise a defendant of the claims being asserted and the essential facts to support them. *Grossman v. Barke*, 868 A.2d 561, 568 (Pa.Super.2005), *appeal denied*, 585 Pa. 697, 889 A.2d 89 (2005). The purpose behind this rule is to enable the parties to a case to be able to ascertain the claims and defenses asserted using their own knowledge. *See id.* "This purpose would be thwarted if courts, rather than the parties, were burdened with the responsibility of deciphering the causes of action from a pleading of facts which obscurely support the claim." *Id.* Therefore, "[i]f a plaintiff fails to properly plead a separate cause of action, the cause he did not plead is waived." *Id.* (citation omitted). Toney's complaint does not include a separate count for misrepresentation. Accordingly, we conclude that the trial court did not err in "dismissing" this claim; it was never part of the litigation.

¶ 35 We therefore reverse the trial court's order insofar as it dismissed Toney's claim for negligent infliction of emotional distress. We affirm the trial court's order in all other respects.

¶ 36 Appeal at 773 EDA 2006 quashed. Appeal at 1191 EDA 2007, order reversed in part and affirmed in part. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

¶ 37 Judge ORIE MELVIN files a concurring and dissenting opinion in which Judge LALLY–GREEN joins.

## CONCURRING AND DISSENTING OPINION BY ORIE MELVIN, J.:

¶ 1 While I have no hesitation in joining the Majority's disposition of the jurisdictional questions and Appellant's claims for intentional infliction of emotional distress and misrepresentation, I am compelled to disagree that Appellant has set forth a valid cause of action for negligent infliction of emotional distress. I acknowledge, as the Majority implies, that the facts of this case are nothing short of heartbreaking. Nevertheless, based on my review of the law of Pennsylvania on negligent infliction of emotional distress, I must respectfully dissent as to the Majority's disposition on that single issue.

¶ 2 I find *Brown v. Philadelphia College of Osteopathic Medicine*, 760 A.2d 863 (Pa.Super.2000), *appeal denied*, 566 Pa. 632, 781 A.2d 137 (2001), to be instructive. There, the plaintiffs filed suit against the hospital alleging negligence and negligent infliction of emotional distress after the hospital erroneously reported that their newborn daughter tested positive for sy-

---

9. "Section 46 [of the Restatement (Second) of Torts] does not recognize liability for mere negligent infliction of emotional distress. However, reckless conduct causing emotional distress renders an actor as liable as if he had acted intentionally." *Pierce v. Penman*, 357 Pa.Super. 225, 515 A.2d 948, 951 (1986), *appeal denied*, 515 Pa. 608, 529 A.2d 1082 (1987).

philis. The plaintiffs sought to recover damages for their subsequent marital breakdown and the plaintiff/wife's emotional distress, as well as the plaintiff/wife's loss of her job after a physical altercation with the plaintiff/husband more than two months after the child's birth. A jury returned a verdict in favor of the plaintiffs. On appeal, however, this Court reversed and remanded for entry of judgment in favor of the hospital. We noted that both of the plaintiffs' claims required the existence of all four elements of negligence: a duty of care, a breach of that duty, resultant injury, and damages. *Id.* at 868. Assuming that the elements of duty and breach were established, we turned to the question of causation. We reasoned in relevant part as follows.

¶ 3 "It is not sufficient, however, that a negligent act may be viewed, in retrospect, to have been one of the happenings in the series of events leading up to an injury. Even if the requirement of actual causation has been satisfied, there remains the issue of proximate or legal cause." *Id.* at 868. Proximate cause is a question of law. *Id.*

> To determine whether an actor's conduct constitutes the proximate cause of an injury, the courts of the Commonwealth have adopted and relied upon the factors set forth in Section 433 of the Restatement (Second) of Torts. *See, e.g., Vattimo [v. Lower Bucks Hosp., Inc.],* 502 Pa. [241,] 246–47, 465 A.2d [1231,] 1233–34. This section provides:
>
> § 433. Considerations Important in Determining Whether Negligent Conduct is Substantial Factor in Producing Harm
>
> The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing harm to another:
>
> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
>
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
>
> (c) lapse of time.
>
> Restatement (Second) of Torts, § 433 (1965).

*Id.* at 869. Applying Section 433 in *Brown,* we concluded that none of the three factors led to the conclusion that the negligence of the hospital was a substantial factor in causing the plaintiffs' harm.[10] Although *Brown's* procedural posture differs from that in the instant matter, I would nonetheless note that this Court has also applied Section 433 of the Restatement (Second) of Torts in reviewing a ruling that a plaintiff's complaint failed to establish proximate cause at the preliminary objection stage of the proceedings. *See Lux v. Gerald E. Ort Trucking, Inc.,* 887 A.2d 1281 (Pa.Super.2005) (affirming dismissal of complaint based on absence of

---

**10.** We also opined that "[t]he only physical harm suffered by [plaintiff/wife] that was the actual and proximate result of receiving the erroneous test result was her receipt of a single injection to treat a disease that she, in fact, did not have." 760 A.2d at 871. We found that this claim also failed because the plaintiffs did not establish the requisite physi-

cal impact for a negligent infliction of emotional distress claim. *Id.* at 871–72. In the case at bar, Appellant does not allege any emotional distress resulting from the reading of the ultrasound which might arguably require us to proceed to the physical impact step.

proximate cause), *appeal denied,* 587 Pa. 731, 901 A.2d 499 (2006).

¶ 4 Similarly, I conclude here that Appellant's complaint fails to establish that Appellees' conduct was a substantial factor in causing her emotional distress. It is not insignificant that Appellant's brief contains little argument on the element of causation and instead merely refers us to paragraphs 42–71 of her complaint. Appellant's brief at 21. My review of those paragraphs reveals that Appellant's claim for emotional distress is premised solely upon her shock at observing her newborn son's significant physical disabilities at the time of his birth, rather than resting upon anything Appellees did or failed to do some four months prior. Even if one were to read Appellant's complaint more liberally as alleging that Appellees had a role in causing her emotional distress, "it is abundantly clear that factors other than the negligence of [the hospital] had a far greater effect in producing the harm complained of" in this case. *Brown, supra,* 760 A.2d at 869.

¶ 5 Hence, as did the trial court, I am compelled to conclude that Appellant's complaint fails, as a matter of law, to set forth a valid cause of action for negligent infliction of emotional distress. Accordingly, I would affirm the trial court's order in its entirety.